138

## DERMOTT STATE BANK *v.* PARKER LUMBER CO.

5-2282                                      342 S. W. 2d 676

Opinion delivered February 13, 1961.

*John F. Gibson,* for appellant.

*Barrett, Wheatley, Smith & Deacon* and *Robert B. Gibson,* for appellee.

PAUL WARD, Associate Justice. This litigation was initiated to establish the relative priorities of a mortgage held by the Dermott State Bank on certain real property and statutory liens held by the Parker Lumber Company and the Kirby Plumbing Company for materials furnished for the erection of a building on said property. The Trial Court held that the Bank's mortgage was subject in part to the statutory liens, and to reverse that decision the Bank prosecutes this appeal. The material facts are not in dispute, and it is not necessary to set out all of the pleadings and orders which have been abstracted.

Sometime prior to August 10, 1959, H. D. Elliott, Jr. and his wife, Mildred Elliott, had obtained title to Lot 5, Block 1, A. M. Bell's Addition to the City of Dermott. Also prior to said date the Elliotts had contracted to buy a certain building located near Lake Village with the

intention of having said building moved to the above described property and then to make certain additions to and repairs on the building. In order to finance the undertaking the Elliotts, on August 10, 1957, executed a mortgage to the appellant Bank to secure their note in the sum of $4500 and for other advances that might be made by the Bank. At about the same time the Elliotts secured a commitment from the Administrator of Veterans Affairs for a loan of $9200, obviously with the intention to use this money to pay their indebtedness to the Bank and also to pay for the house, the moving of the house, and for the necessary materials and labor.

In the course of the improvement operations and before it was finally completed the Elliotts found it necessary to request additional advances from appellant Bank. Pursuant thereto the Bank agreed to furnish an additional sum (under the terms of the aforementioned mortgage) in the amount of $4700 — making a total of $9200. Apparently this amount was later extended to $5450 or a total of $9950. (Later the Elliotts sold the property to another party but in this opinion we will treat the issues as if the Elliotts owned the property at all times.)

When it came time for a final settlement it appeared that the Parker Lumber Company had an unsatisfied claim for materials furnished in the amount of $1,243.12; that the Kirby Plumbing Company had an unsatisfied claim for materials furnished in the amount of $785; and the Peoples Lumber Company had an unsatisfied claim for materials furnished in the amount of $479.56. Each of the above mentioned parties perfected their liens on the property in accordance with law, insofar as is shown in the brief.

The Administrator of Veterans Affairs was unwilling to accept a mortgage and advance the sum of $9200 to the Elliotts until all liens, including the Bank's mortgage, had been satisfied. In order to achieve this the Bank, the Parker Lumber Company, and the Kirby Plumbing Company entered a written agreement. Pur-

suant to this agreement the Bank satisfied its mortgage and the other parties released their liens, and on May 5, 1958, the Elliotts executed their note and mortgage in the amount of $9200 to the Administrator. Thereupon the Administrator paid $9200 to the Bank for distribution. The effect of the agreement heretofore mentioned was that the lien of the Bank and the liens of the Lumber Company and the Plumbing Company would retain the same priority with respect to the $9200 that they had originally with respect to the property. The present litigation was therefore instituted for the purpose of determining said priorities. This was necessary because it was obvious that all of said claims could not be paid in full out of the funds made available by the Administrator.

The Trial Court correctly held that the Peoples Lumber Company had first lien on the property. This was true because that Company was not a party to the agreement heretofore mentioned, and so its lien remained undisturbed. The court further held that out of the $9200 the Bank was entitled first to receive the sum of $4500 (the amount in the original mortgage) and $1300 advanced by the Bank before October 1, 1957, together with interest found to be due thereon. From these findings appellees have not appealed, and they are therefore affirmed.

The Court then found that (out of the balance of the $9200) the Parker Lumber Company should be paid the sum of $1,243.12 with interest; the Kirby Lumber Company should be paid the sum of $785 with interest; and the rest of the $9200 should go to the Bank. To reverse this portion of the Court's decree appellants make one contention only:

"The Court erred in holding that the mortgage ... to Dermott State Bank did not contain the 'purpose language' as required by Section 51-605 of the Statutes of the State of Arkansas."

The above section of the statute was construed in *Ashdown Hardware Company* v. *Hughes,* 223 Ark. 541,

267 S. W. 2d 294 and in *Jack Collier East Company* v. *Barton,* 228 Ark. 300, 307 S. W. 2d 863. In the *Hughes* case we held that the test in determining the priority of a mortgage lien over a statutory lien was the "purpose" for which the mortgage proceeds were obtained. If to furnish money to pay for improvements on the mortgaged property the mortgage lien was prior to statutory liens for materials. In the *Barton* case we made it clear that the "purpose" (to make improvements) must be set forth in the mortgage itself — that is, the purpose cannot be shown by extrinsic evidence.

We have carefully examined the mortgage given to appellant in this instance and find no language stating that the money advanced was to be used for construction or improvements on said Lot 5.

Appellant directs our attention to certain language in the mortgage stating it covers Lot 5 together with "all buildings thereon or to be placed thereon," contending it is sufficient to comply with the rule heretofore announced. We do not agree. The above quoted language merely describes the security for the loan and sheds no light on the purpose for which the proceeds of the loan were to be used.

It follows therefore from what we have heretofore said that the decree of the Trial Court must be, and it is hereby, affirmed.

Affirmed.

ROBINSON, J., dissents.